## Ely and others *against* Tweedy and others.

Where the question on the trial of an action for goods sold and delivered, was whether *D*, who received the goods immediately from the plaintiff, was the authorized agent of the defendants, the plaintiff, to establish such agency, introduced evidence to show, that *D* had acted as the general agent of the defendants in the purchase and sale of property of all descriptions. He then proved, that *D* had purchased of *P* certain real estate, as agent of the defendants, and taken deeds thereof to himself, as their agent; and to show that the defendants had knowledge of the acts of *D*, as their agent, the plaintiff exhibited in evidence a release deed from *D* to the defendants of the estate so conveyed to *D*, referring to the deeds from *P* to him. Held, that such release deed, in connexion with the other deeds, was evidence for the purpose for which it was introduced.

THIS was an action for goods sold and delivered; tried at *New-London, September* term, 1846, before *Hinman*, J.

The plaintiffs claimed to recover for goods sold and delivered, at different times, to *Seymour Davenport*, who purchased them as agent, under the name of " *Seymour Davenport*, agent." But he did not inform the plaintiffs for whom he was agent; and there was no evidence that the plaintiffs, at that time, knew that he was the agent of the defendants.

The plaintiffs and defendants were, respectively, merchants, residing in the city of *Norwich*. The defendants admitted, that *Davenport* was their agent to sell, as a peddler, goods delivered to him by them, and charged to him as " *Seymour Davenport*, agent," to sell or return the goods, at stated prices; but they denied, that he was their agent to purchase goods, or had ever been authorized by them, to purchase goods on their account, except upon a verbal or a written order, in certain specified instances.

The plaintiffs claimed to have proved, that from the 18th of *September*, 1838, until some time after the goods in question were purchased, *Davenport* had been the defendants' general agent, authorized by them to buy, sell, exchange and deal in all kinds of real and personal estate; and, as such, to transact any business that he might choose to engage in; and that he had, during that time, transacted an extensive business, in purchasing and selling, bartering and exchanging, all kinds of goods, at a store in *Windham*, and about the country, as a peddler; and had also dealt in real estate at *Windham*, as the general agent of the defendants, with their full

knowledge of and assent to all his acts, as such general agent.
For the purpose of establishing such agency, and to prove the
knowledge of the defendants, of *Davenport's* dealings, as
their agent, the plaintiffs, in connexion with other evidence
tending to prove the agency, proved, that about the year 1834,
*Davenport* became deeply insolvent ; and with a view to so
transact business, that his creditors should not be able to take
any property that he might have in his hands, he became the
general agent of his grand-father, and of one *Southworth,*
another relative of his, and that, as such general agent, he
bought and sold goods of all kinds, and had extensive dealings,
at a store in *Windham* and in *New-York,* and in other places
about the country, as a peddler ; all of which was done by
him, under the name of " *Seymour Davenport,* agent ;" and
that in *September* 1838, *Davenport's* grand-father being then
dead, *Southworth* conveyed to the defendants, the personal
property then in the hands of *Davenport* as agent, amounting
to the sum of 1932 dollars.    And the plaintiffs claimed, that
the defendants then became the successors of the former par-
ties for whom *Davenport* had dealt as agent, and authorized
him to transact business as their general agent, in the same
manner that he had been in the habit of doing, as agent of
his grand-father and *Southworth.*    For this purpose, the plain-
tiffs offered in evidence a deed from *Whitman Potter* to *Dav-
enport,* of certain real estate in the borough of *Willimantic,*
dated *December* 24th, 1838, in which deed the grantee was
described as " agent of *Tweedy & Barrows* of *Norwich*"—
[the defendants,] *habendum* " to said *Davenport,* in said capa-
city," with covenants also to " said *Davenport,* in said capaci-
ty :" also, a release deed from *Whitman Potter* to " *Seymour
Davenport,* agent of *Tweedy & Barrows,*" of other real estate
in *Willimantic,* dated, *February* 18th, 1838—*habendum* " to
said *Davenport,* agent as aforesaid :" also a release deed from
*Seymour Davenport* to *Tweedy & Barrows,* dated *April* 8th,
1839, describing the property released, by its situation, with
this addition : " being the same lot, which *Whitman Potter*
conveyed to me, as agent, by deed bearing date in *February*
last, and which is recorded in the rcords of the town of
*Windham,* together with the buildings and appurtenances
thereto belonging."

No objection was made to the introduction of this evidence ;

but the court, in charging the jury in relation to it, remarked to them, that as the last-mentioned deed referred expressly to the first-mentioned deeds, it tended to show, that the defendants, at that time, had knowledge that *Davenport*, in taking the deeds from *Whitman Potter*, was claiming to act as their agent.

The plaintiffs offered in evidence the testimony of *Joseph Lewis*, that he was the clerk of *Almy Crosby & Co.*; that *Davenport* applied to purchase goods of them, as the agents of the defendants; that the witness thereupon went to the store of the defendants, and enquired of Mr. *Dawley*, one of the defendants, if he knew *Davenport;* that *Dawley* informed him, he did; that on being told that *Davenport* was at the store of *Almy Crosby & Co.*, and wanted goods, and that *Davenport* said he was the agent of the defendants, *Dawley* replied to him, " well, sell him the goods—he will not buy more than he can pay for,—we let him have all the goods he wants;" and thereupon *Almy Crosby & Co.* sold to *Davenport* the goods he applied for. *Lewis* also testified, that *Davenport* did not apply to the defendants but once, as to their selling him goods, and that was at the store of the defendants; but that he saw no one but *Dawley*.

To rebut this testimony, the defendants introduced their three clerks, *Bennett, Hyde* and *Maples*, who testified, that they were present when *Lewis* applied at the store to make enquiry as to *Davenport*, in 1845; that *Dawley* was out, or had gone out, and, as far as they recollected, had left *Norwich;* that *Lewis* inquired, if *Bennett* knew *Davenport*, and on being told that he did, *Lewis* enquired if he was good? to which *Bennett* replied, that if he should come to their store, and want goods, they should let him have them; and that nothing was said as to his being agent. On cross-examination, they also testified, that they knew *Davenport* had failed; and that the goods they let him have, they did not sell to him, but delivered them to him, to sell or return, at stated prices; and that they did not inform *Lewis* of the terms upon which they did, or should, deliver goods to *Davenport*, if he wanted them, but only replied to his question, asking if *Davenport* was good, that " they should let him have all he wanted."

The plaintiffs still insisted, that *Lewis* had the conversation with *Dawley*. They also claimed to the jury, that if the con-

versation was with *Bennett*, the clerk of the defendants, and <span>New-London, July, 1847.</span> he represented *Davenport* to be good, as stated by him, when he knew he was a bankrupt, it showed that *Bennett* intentionally misled *Lewis*, in suffering him to leave under the impression that *Davenport* was worthy of credit, and that the defendants were willing to trust him, when he knew that they did not trust him, but only delivered goods to him, to sell for them, or return, at stated prices.

<span>Ely *v.* Tweedy.</span>

To this the court assented, in commenting upon the testimony of these witnesses to the jury ; and the plaintiffs obtained a verdict. The defendants thereupon moved for a new trial for a misdirection.

*Strong* and *Wait*, (a) in support of the motion, contended, 1. That the charge was wrong as to the effect of the deeds introduced by the plaintiffs. The point in controversy was, whether *Davenport*, in purchasing the goods in question, acted as the authorized agent of the defendants. But the deed did not show any authority in him to act as their agent, or that they *knew* of his acting in that capacity. The knowledge which the plaintiffs were attempting to prove, and which was referred to in the charge, was *actual* knowledge ; but the record of a deed is, at most, but *constructive* notice to third persons. *Sumner* v. *Rhodes*, 14 *Conn. R.* 135. The reference in the last deed to the preceding ones, had no bearing at all upon the point in controversy. The jury were here misdirected as to the application and effect of the evidence before them.

2. That the charge in relation to the representations made by *Bennett* to *Lewis*, as to the credit of *Davenport*, was also erroneous. Those representations did not conduce to show that *Davenport* was the agent of the defendants in the purchase of these goods. *Bennett* could not subject the defendants in this suit, by any declarations of his, true or false, regarding the standing of *Davenport*. [This point was passed unnoticed, by the senior counsel.]

*Rockwell* and *E. Perkins*, (a) (with whom was *Foster*,) con-

(a) The counsel on both sides, on being enquired of by the court, whether they had briefs, said they had not, and offered excuses for the omission founded on the nature and circumstances of the case; the counsel on one side alleging, that they had expected a correction of the motion, which might affect the points

tra, contended, 1. That the remarks of the judge to the jury in relation to the deeds, furnished no ground for a new trial. In the first place, the deeds were admitted in evidence without objection, on the part of the defendants; and no point of law was made by their counsel, either during the examination or on the argument of the cause. But secondly, if they had been objected to, the deeds were admissible, and admissible too, for the reasons stated by the judge in commenting upon the evidence. The release deed from *Davenport* to the defendants, referring to the other deeds, in which *Davenport* was described as the agent of the defendants, certainly conduced to show, that they *knew* of his having acted in that capacity.

2. That there was nothing connected with or growing out of the testimony of *Lewis,* or of *Bennett* and the other clerks, which furnished ground for a new trial. The latter were introduced by the defendants, to disprove the testimony of *Lewis.* In the first place, no objection was made to the admission of any of the testimony, by either party. Secondly, no question of law was raised in the argument of the cause to the jury. The comments of the counsel related only to the weight of the evidence. Thirdly, no point of law was decided by the court, or stated to the jury in the charge.

HINMAN, J. It was necessary for the plaintiffs to show, that the defendants had made themselves liable for the goods furnished to *Davenport,* or they could not recover. They attempted to do this, by showing that he was authorized, by the defendants, to trade and deal generally, in all descriptions of property, as their agent. He had acted as their agent in making the purchase in question, as he had done, in many instances, in making purchases of others. But unless the defendants had authorized him to do this, or had held themselves out to the world as persons intending to pay for goods furnished him, they would not be liable. To show that they had so held themselves out to the world, it was important to show, that they had knowledge of his acts, as their agent. To do this, to some extent, they proved, that

he purchased real estate of *Whitman Potter,* as agent for the defendants, and took deeds of it to himself, as their agent; and it is expressed in the deeds, that the consideration was received from him, as their agent. This did not show, that he was in fact their authorized agent; because it did not appear, that they assented to his acts, or had any knowledge of them. But when it was shown, that a few months after this, the defendants took a deed from *Davenport* of this same property, and in this deed it is recited, that the property was the same which was conveyed to him by *Whitman Potter,* and *Potter's* deed was referred to; the judge at the circuit thought this went to show, that the defendants at that time had knowledge, that, in taking the deeds of *Potter, Davenport* acted as their agent, and so told the jury. This seems to be rather the remark of the judge upon the weight of the evidence, and therefore, not strictly a question of law.

But if there is a question for revision here, we have no doubt that it was decided correctly. Indeed, it would seem that counsel must have been satisfied of this, or they would have objected to the introduction of these deeds in evidence. They were obviously introduced for the purpose of showing *Davenport's* agency, by showing his acts as such agent, brought home to the knowledge of the defendants, and impliedly assented to by them, inasmuch as they did not disavow them, when so brought to their knowledge; but, on the contrary, took the benefit of the conveyance to him, by taking a deed of the property from him. If the deeds did not tend to prove this, we do not see how they were evidence at all. The remark of the judge, therefore, was nothing more than saying to the jury, that the deeds were evidence for the purpose for which they had been introduced.

The point in regard to *Bennett's* testimony seems to be abandoned. It obviously raises no question of law, and was, at most, mere comment upon the evidence. We therefore advise the superior court not to grant a new trial.

In this opinion the other judges concurred.

New trial not be granted.