THOMAS HUTCHINSON v. SIMON WHEELER.

*Slander.   Evidence.*

In an action of slander for imputing a crime, the defendant may give in evidence under the general issue, in mitigation of damages, such facts as tend to show that at the time of speaking the words he believed they were true and that he spoke them in good faith.   But such facts are not admissible for that purpose under such plea, if they amount to proof of the actual truth of the words charged.

In an action of slander for charging the plaintiff with poisoning the defendant's cow, *held*, that under the general issue it was competent for the defendant to show in mitigation of damages, as tending to prove his belief in the truth of the words charged, that his cow had been poisoned; that for some time previous to the loss of the cow, there had been a bitter hostile feeling on the part of the plaintiff towards the defendant; that the defendant having at a former period poisoned the plaintiff's dog, the plaintiff had several times threatened to pay the defendant in his own coin; that the defendant had attempted to instigate a malicious prosecution against the plaintiff; and that shortly before the plaintiff's cow was poisoned, a new quarrel had broken out between the parties.

Where a witness on the part of the plaintiff was enquired of on cross-examination, if the plaintiff had not assisted him in a law suit which the witness had had with the defendant, and the witness answered in the negative, *held* that it was competent for the defendant to contradict the witness in this respect by other testimony, with a view of discrediting the witness.

This was an action for slander.   Plea—the general issue, and trial by jury, at the March Term, 1861, PECK, J., presiding.

The plaintiff on trial introduced evidence tending to show the speaking of the words set forth in the declaration, and that they were spoken in the sense and meaning attributed to them in the declaration, and tending to prove all the facts necessary to entitle the plaintiff to recover on these counts.   The substance of the slander charged in the declaration, was that the defendant poisoned the plaintiff's cow, and thereby caused her death.

The defendant then offered to show that just before speaking the alleged slander he had a cow die suddenly by some active mineral poison, and that she was poisoned by some person by design for the purpose of injuring the defendant ; and also to show such facts and circumstances tending to implicate the plain-

tiff as the person who administered the poison, which facts and circumstances came to the defendant's knowledge before the speaking of the words charged, as furnished probable cause and good reason for belief on the part of the defendant, at the time of speaking the words, that the plaintiff was the person who intentionally poisoned the cow; and that the defendant in good faith did then believe that to be the fact; and that at the time of speaking the words, the defendant believed them to be true. This evidence was offered, not as a defence to the action, nor to show that the plaintiff was in fact guilty of what the defendant had charged him with, but as evidence in mitigation of damages.

The plaintiff objected to the admission of this evidence, (which, so far as it tended to implicate the plaintiff as the guilty person, was of a circumstantial character). The court overruled the objection and admitted the evidence for the purpose for which it was offered, to which the plaintiff excepted.

This testimony consisted mainly in the fact that for some three years next before the defendant lost his cow, there had existed a violent quarrel between the parties, and a bitter feeling of hostility and various threats on the part of the plaintiff towards the defendant, which continued down to the time the defendant lost his cow and to the speaking of the alleged slander by the defendant.

One piece of this testimony introduced by the defendant was that about three years before the speaking of the words, the plaintiff, at a certain justice trial in which the defendant was sued by some one (not this plaintiff) for poisoning a dog, the plaintiff declared to several persons that he would pay the defendant in his own coin; and to explain it, the evidence tended to show that the defendant was a tanner, and carried on that business in the neighborhood where the parties resided, in Worcester; and that the dogs in the neighborhood were doing damage to his hides about the tannery; and that he proclaimed that unless the dogs were kept away, he should poison them; and that soon after that he did kill several of the neighbors' dogs by poison, and among them a dog belonging to this plaintiff, and one belonging to the plaintiff in that justice suit; that the plaintiff in this action attended that justice trial, and immediately after the jury returned their verdict in that action, this plaintiff

declared to a number of persons present, that the defendant need not feel so well about the result of that suit, that he (this plaintiff) should pay the defendant in his own coin, if he lived long enough. This was objected to by the plaintiff, but admitted by the court.

Another piece of this testimony was that some time after this justice court and before the plaintiff lost his cow, the plaintiff and the defendant met in the street, and that the plaintiff told the defendant he must pay him (the plaintiff) for his dog; and after some altercation about the defendant's having poisoned the plaintiff's dog, the defendant told the plaintiff he would pay him for the dog if he would pay the damage the dog had done him; the plaintiff claimed that he had not done any damage, and said that if the defendant would not pay him for the dog, he would pay the defendant for killing him; that the defendant said the plaintiff might poison his dog any time he found him troubling him about his premises, and that he would find no fault; and that the plaintiff replied he would not poison his dog—he was not of consequence enough.

The evidence also tended to show (which was admitted under objection by the plaintiff's counsel,) that some infamous or vulgar story had been circulated about the defendant's wife, and that the defendant, a few days before the cow died, traced the origin of it in part to the plaintiff's wife; and that he charged her with it, which was known to the plaintiff just before the cow died; and the defendant, who was a witness, testified that when the cow was poisoned, and when he spoke the words charging the plaintiff with having done it, he supposed that this difficulty about this story was one reason that induced the plaintiff to retaliate by poisoning his cow; and that when he spoke the words complained of, he believed from the threats and declarations the plaintiff had made, that had before that time come to his knowledge, and the other circumstances in evidence that had before been communicated to him, and the hostile feeling the plaintiff had towards him, that the plaintiff did wilfully poison his cow.

The defendant also, in connection with the other evidence on this point, introduced evidence (which was objected to by the

plaintiff) tending to show that during this time, a year or more before the cow died, the plaintiff endeavored to get the defendant prosecuted criminally for letting the filth from his tannery into the stream which run through a back pasture of the plaintiff's, about 60 rods from the road, and the same distance from the plaintiff's buildings where he resided, claiming that it created a stench in his pasture which was offensive—when in fact the defendant did not let it into the stream except a little occasionally in the winter, but buried it in the earth, and let the neighbors have it who drew it off for manure; and that there was no pretence or probable cause for such prosecution, claiming that it was done by the plaintiff merely from malicious motives; and that this was known to the defendant before his cow died.

The evidence on the part of the plaintiff tended to show that the filth from the tannery did float down and lodge on the plaintiff's land near the banks of the stream, and create at times an offensive smell in his pasture.

The court told the jury in relation to this testimony in reference to the efforts of the plaintiff to get the defendant prosecuted, that they should reject it entirely unless they found that there was no probable cause for such prosecution, and such a total absence of any ground for it as to satisfy them that it was attempted by the plaintiff solely from malice towards the defendant, and then it could have no effect only to show the hostile feeling on the part of the plaintiff towards the defendant, and that such hostile feeling was in no way material in the case any further than the jury thought that, if known to the defendant previous to speaking the words, it might have a tendency, with the other evidence in the case. to induce the defendant to believe, at the time he spoke the words, that the plaintiff did wilfully poison his cow.

The plaintiff introduced one Kelley as a witness, whose testimony tended to prove facts material to the plaintiff's case; and on cross examination, his testimony tended to prove that he was unfriendly to the defendant, and had had a law-suit with him, having sued him and had a justice trial. He was inquired of in reference to his relations and intimate and friendly feelings towards the plaintiff, and whether the plaintiff had not advised, aided

and assisted him in his suit against the defendant, which Kelley denied, saying that that suit was after the speaking of the slanderous words by the defendant. The cross examination of Kelley tended to show that he had been somewhat officious in aiding in this suit on the part of the plaintiff.

The defendant induced one Templeton as a witness, with a view to affect the credit due to Kelley's testimony. Templeton's testimony was in substance that he was present at the trial between Kelley and the plaintiff, and that he was requested by the plaintiff and Kelley (who were also present,) to assist Kelley in the trial, and did so ; that the plaintiff was busy looking up witnesses for Kelley, and advising and proposing questions for Kelley's counsel; that after the decision, the plaintiff and Kelley and the witness Templeton were present advising with Kelley's counsel about an appeal     This evidence was objected to by the plaintiff, but admitted by the court for the purpose above stated.

The court instructed the jury as to the law applicable to the merits of the case, touching the right of the plaintiff to recover, and generally as to the law applicable to the rule of damages, to the satisfaction of the plaintiff's counsel, and to which no exception was taken by the plaintiff's counsel except as to the effect the court gave to the evidence in mitigation of damages. But on the subject of damages, the plaintiff's counsel requested the court to instruct the jury that they should lay out of the case all the evidence (above stated) introduced in mitigation of damages, and that it had no tendency to mitigate the damages. The court refused so to charge, but in reference to that evidence, after referring to it, told the jury that, as the court had already told them on another branch of the case, it must be taken in this case, that the plaintiff was, in fact, innocent of the crime or charge imputed to him by the slanderous words set forth in the declaration ; that the defendant could not rely on the truth of the words spoken by him without pleading it specially, and thereby giving the plaintiff notice that he intended to rely on it, which in this case he had not done ; that in actions of this character the jury had a right to give exemplary damages, that is, damages over and above what the plaintiff had really sustained ; that if the defendant

was actuated, in speaking the words for which the plaintiff seeks to recover, by actual malice or malignity of feeling, and spoke them for the purpose of injuring the plaintiff's reputation, it tended to aggravate the damages. And, on the other hand, if, at the time of speaking the words, he honestly supposed what he said was true, it tended to mitigate the damages below what they should be if he maliciously invented the slander without any belief in its truth, or reasonable ground of such belief; and it was in this view only that that evidence was admitted and to be considered; that the question was not so much whether the plaintiff was, in fact, guilty of the charge or crime imputed to him by the defendant, as whether the defendant had reason to believe, and did believe he was guilty at the time he spoke the words complained of; that if the jury thought that the defendant had not sufficient ground for such belief, yet, if the defendant misjudged and did believe it, it had a tendency, to some extent, to mitigate the damages; still this evidence furnished no reason why the plaintiff should not recover all the actual damages he had sustained, but would go in mitigation of exemplary damages; that notwithstanding this evidence, the plaintiff, if he recovered, was entitled to recover a just and reasonable compensation for the injury he had sustained, and such damages as the jury should think, under all the circumstances, was right, and would do substantial justice between the parties; what would be a just compensation to the plaintiff, and a just punishment to the defendant.

The jury returned a verdict for the plaintiff.

The plaintiff excepted to the foregoing rulings of the court, and to the refusal of the court to charge as requested, and to the portion of the charge above given.

*Wing, Lund* and *Taylor*, for the plaintiff.

*Peck & Colby*, for the defendant.

POLAND, CH. J. In an action of slander, for words imputing a crime to the plaintiff, on proving that the defendant spoke the words constituting the charge, the plaintiff is entitled to recover,

---

Hutchinson *v.* Wheeler.

---

unless the defendant interpose some ground of justification by plea, and support it by proof.

The plaintiff is not bound to give any proof of malice in the defendant; the law implies malice from the speaking, sufficient to maintain the action. The action, however, proceeds on the ground of malicious speaking, and malice is one of the most important and essential elements of the defendant's liability. The plaintiff may, for the purpose of enhancing his right to recover damages against the defendant, give in evidence almost any facts tending to prove that he was in fact actuated by malicious motives in speaking the words. So, on the other hand, the defendant may give in evidence facts and circumstances, to rebut the proof or presumption of malice, and thereby lessen or mitigate the damages. He can not justify the speaking, by proving the truth of the charge, or in any other way, under the general issue, as such defence must always be specially pleaded; but he may, under the general issue, give in evidence any facts that tend properly to show that he did not speak the words wantonly and maliciously, for the purpose of injury to the character of the plaintiff. One of the grounds on which a defendant in such action may disprove malice, and so mitigate the damages, is by proof of such facts and circumstances as show that he had reason to believe, and did believe, when he spoke the words, that they were true, and that therefore he acted *bona fide*, and not wantonly and maliciously, when he spoke them. This general proposition is not denied in any of the cases on this subject, but many cases, especially in New York, add to this a qualification, that such facts and circumstances must not be such as tend to prove the truth, or would form links in a chain of evidence to establish a justification. It is certainly difficult to see what facts or circumstances could exist, that could justify one in believing or suspecting that another had committed a crime, when such facts and circumstances had no tendency to prove it, and could not be used even as links in a chain of evidence to establish it. There is a very great conflict of decision in the cases on this subject, and the decisions are numerous where this qualification has been wholly rejected.

We are not aware that the question has ever been decided in this state, and we therefore are at liberty to adopt such rule as we deem best founded in reason, and most consonant to general legal principles.

In *Williams* v. *Miner*, 18 Conn. 463, this question arose, and the whole subject is most thoroughly discussed, and all the cases, English and American, examined by CHURCH, CH. J.    The principle established by that case is thus stated : " In an action of slander the defendant, under the general issue, without notice of special matter of defence or justification, may prove, to repel the presumption of malice, and in mitigation of damages, facts and circumstances showing a reasonable ground of belief in the defendant of the truth of the words, but not amounting to proof of their actual truth."

We are best satisfied with the rule there laid down, as one founded in good reason, and running counter to no other established rule of law.

The defendant introducing such proof is not allowed to introduce it as evidence of the truth of the charge, nor to claim for it, or argue from it, that the charge is true, or probably true, but only that he was thereby induced to believe that what he said was true, and therefore spoke the words in good faith. Nor can a defendant in such a case go into evidence that really proves the charge to be true, under pretence of mitigating the damages, he must concede that his evidence does not support it.

The evidence offered by the defendant and admitted in this case, against the objection of the plaintiff, was in substance this,—that the defendant's cow had been poisoned by some one ; that for a period of some three years, there had been a violent quarrel between the plaintiff and the defendant, and a bitter feeling of hostility on the part of the plaintiff towards the defendant ; that two or three years before this, and after the defendant had poisoned the plaintiff's dog, and some others, that had damaged hides in his tannery, the plaintiff threatened that he would pay the defendant in his own coin, and repeated this in substance at different times ; that about a year before this time, the plaintiff, without any just cause, had attempted to get a criminal prosecution instituted against the defendant ; and that a few days

before the loss of the cow by the defendant, a new quarrel had broken out between the parties, growing out of some slanderous story in relation to the defendant's wife, which he claimed had been circulated by the plaintiff's wife.

This evidence is first objected to, on the ground that those facts, if true, would tend to prove the truth of the words, or at least that they would, or might, form links in a chain of evidence to prove the truth of them.

It must be conceded, that if the defendant had pleaded in justification that the words were true, or if the plaintiff had been indicted for the offence imputed, some of these facts would have been, not only admissible, but necessary evidence. It would have been necessary to prove that the defendant's cow was poisoned. This would have to be proved, in order to show that the crime had been committed. By itself, it no more proved that it was committed by the plaintiff than by any other person; it would be a fact necessary to be proved in a prosecution against any one. So it would be admissible to prove that a quarrel existed between the parties, in order to show a motive on the part of the plaintiff to commit the crime; and the evidence that the plaintiff had made threats against the defendant, would have a still stronger effect against the plaintiff. But if the evidence of all these facts was satisfactory, it would all fall quite short of establishing proof of the offence, and therefore, as already stated, is not open to the objection that the defendant was really proving a justification under the general issue.

At the same time we think these facts might have had, and naturally would have, an effect upon the mind of the defendant, to induce him to believe that the plaintiff had done him the injury he had suffered. Some one had secretly poisoned his cow. The first impulse of his mind would be, that it was done by an enemy. It was a crime that could have been committed from no motive of interest or advantage to the perpetrator, but only to do damage to the owner. The facts admitted in evidence tended to show that a bitter feeling had existed between the parties for a long time; the plaintiff had threatened revenge; he had wrongfully attempted to get the defendant prosecuted; and a new and fresh cause of quarrel had just broken out between them. Was it not,

perfectly natural and legitimate that the defendant's conclusion wouldbe, that the injury he had suffered was caused by the plaintiff, without further ground of belief, even though these facts alone would furnish no sufficient legal evidence of the fact?

In our judgment they would naturally have this effect, and were therefore admissible in evidence, as tending to show that when the defendant made the charge, he made it in good faith, supposing he had sufficient reason to believe it to be true.

It is also objected that if it were admissible to prove that a state of hostility and ill feeling existed between the parties, only general evidence should have been admitted, and not evidence of particular facts. But it is often difficult in such cases to ascertain the true state of feeling, and the extent and intensity of hostile feeling, between parties, by mere general evidence, and it must depend much upon the circumstances of each particular case, how far it is necessary to allow such evidence to go into detail, to show it, and much must be left in this regard to the discretion of the judge conducting the trial, to get the matter fairly before the jury.

It is also objected that by this course of proceeding, evidence may be introduced relative to many different transactions, of which the plaintiff has no notice from the pleadings, and therefore may not be prepared to meet and rebut them with his proofs. But we do not apprehend any great practical difficulty on this subject, no greater at least than may arise in any case where any other class of facts and circumstances may be relied on to rebut the presumption of malice. In this class of cases, involving questions of character, a wide range is usually taken, and generally no great danger of surprise by the introduction of proof of which the other party is not apprised. If, however, a party is really taken by surprise, the court before whom the suit is tried will take care that the party is not prejudiced thereby. The objection, we think, is more fanciful than real.

The evidence objected to, we think, was properly admitted for the purpose for which it was offered, and the charge of the court upon it, and its effect, was entirely correct. The objections to the charge are in substance the same as those made to the evidence itself, which are not tenable.

The remaining objection is to the admission of the evidence of Templeton to contradict the plaintiff's witness, Kelly.

Kelly on his cross examination had been enquired of as to the relations between him and the parties, as to his friendship to the plaintiff, and hostility to the defendant, and particularly if the plaintiff had not aided and assisted him in a law suit against the defendant. This he denied. Templeton was called by the defendant to contradict him in this partcular. It is objected that the inquiry to Kelly was wholly collateral, and that therefore the defendant was bound by Kelly's answer. It is always admissible for the purpose of affecting the credibility of a witness to prove his friendly relations to the party calling him, and hostility to the party against whom he testifies, or that his interest is in favor of the one, and against the other, and it has never been supposed, that a party by enquiring as to these matters on cross examination of the witness, was precluded from proving the contrary if he could. Such enquiries are not collateral, so that the party is bound by the witness' answer. The common case of asking a witness on cross examination, if he has not stated differently from what he testifies, stands on the same principle, and here the settled rule of practice requires the witness to be first enquired of. It would be very novel, that a witness who should deny on cross examination that he was interested for the party calling him, or that he was hostile to, or had made threats against, the other, could not be contradicted. The settled practice has been the other way. The case of Stevens v. Beach, 12 Vt. 583, cited by the plaintiff to support this objection, was wholly a different question ; the question put and answered on cross examination was purely and strictly collateral.

The judgment is affirmed,